IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOYCE H. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | **ENTERED** |
| | ) | JUL 26 2001 |
| vs. | ) | Case No. CV-00-TMP-523-S |
| | ) | |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

### MEMORANDUM OPINION

This case is before the court on the defendant's motion for summary judgment filed August 17, 2000, to which the plaintiff responded on August 31, 2000. For the reasons explained below, the motion is due to be granted.

### Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-

movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## Undisputed Facts

Applying these standards to the evidence now before the court, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the non-moving plaintiff.

Prior to 1989, plaintiff was employed as the Executive Vice President/Chief Financial Officer of St. Francis Hospital, Inc., in Miami, Florida. Part of her compensation for that employment included disability insurance coverage, both under an employee group plan provided by defendant and an executive disability policy provided by another, unrelated insurance company. Part of plaintiff's employment responsibilities involved administering the employee group insurance benefits.

On December 17, 1989, plaintiff became disabled due to bipolar disorder/manic depression manifested in panic attacks and agoraphobia. She has and continues to receive psychiatric and psychological treatment for these disorders, as well as for alcohol and substance abuse, since at least 1985. On January 1, 1990, plaintiff reached a severance and settlement agreement with her employer, setting terms under which she would end her employment. Almost immediately, plaintiff began receiving monthly disability payments of approximately $12,000 from her executive disability policy with Provident Life Insurance

4

Company, but she took no steps to file a claim for disability with or to notify defendant Metropolitan Life of her possible entitlement to benefits under the employee group coverage. In 1992, plaintiff successfully sought Social Security disability benefits, but again did nothing to file a claim with Metropolitan.

In 1998, plaintiff filed a claim for long-term disability benefits with Metropolitan. Plaintiff's claim form was dated December 13, 1998, and apparently received by Metropolitan's Atlanta office on December 31, 1998. Accompanying the claim form was a letter written by the plaintiff, also dated December 13, 1998, in which she explained her medical problems and history, as well as her then-current financial problems. In it she stated:

> It was only recently brought to my attention by my attorney that I should now and have been in the past receiving payments under my employer group disability plan. It was only then that I remembered that we had had such a plan at St. Francis Hospital and that I was entitled to benefits. I had in fact been the hospital officer in charge of purchasing all insurance for the hospital and that I had worked with Tom Cundy and Dave Adams on this plan. My delay in filing has been due completely to the effects of my mental illness. It is a shame that I have suffered so due to this. It is certainly no one else's fault. In fact St. Francis Hospital continued to pay for all my benefits thru [sic] 1990.

Plaintiff's letter went on to note that, since her departure, St. Francis Hospital had closed and she did not know how to contact anyone regarding the hospital's benefits plan. She mentioned that, while employed, she and two other hospital officers were the only

5

employees of the hospital authorized to sign disability applications on employees seeking long-term disability.

Metropolitan responded promptly to the letter and application, sending a letter to plaintiff dated January 8, 1999, rejecting plaintiff's claim for disability benefits due to "late filing." The letter pointed out that standard disability policy language provided that the claim must provide proof of disability within three months after the end of her Elimination Period, and that "[n]o benefits are payable for claims submitted more than one year after the date of disability." Nonetheless, benefits could be paid on claims submitted after the one-year limitation if:

1. it was not reasonably possible to give written proof of Disability during the one year period; and

2. proof of disability satisfactory to us was given to us as soon as was reasonably possible.

In a subsequent letter, responding to plaintiff's administrative complaints about the reject of her claim, Metropolitan wrote:

> Your disability claim was filed on 12/29/98. Your disability date was 12/17/89, over nine years prior to your filing a claim. In addition to filing your claim late, we lack vital information from your employer which is required in the processing of disability claims. At this time, St. Francis Hospital terminated coverage with MetLife Insurance Company. Also, your former employer has been sold and is currently no longer in existence. There are no contacts to discuss any issues or concerns related to this particular claim.

After plaintiff's attorney wrote a letter on March 6, 1996, requesting a further review of her disability claim, Metropolitan responded with another letter on May 5, 1999, in which it again rejected. It stated:

> At this time, we must re-affirm our denial of Ms. Jones' Disability claim because her application for benefits was not received by MetLife until December, 1998; ten years after the date Ms. Jones' [sic] indicates her Disability commenced. MetLife is materially prejudiced by this untimely application for benefits in that we are unable to develop medical and vocational information concerning Ms. Jones' alleged disability for the period of time she claims to be disabled. In addition we are unable to verify Ms. Jones' eligibility for benefits under any Plan her employer may have had with MetLife. MetLife is also materially prejudiced because we are unable to obtain a copy of St. Francis Hospital Inc.'s Summary Plan Description due to Ms. Jones' untimely application for benefits.

Plaintiff filed suit in this action on March 2, 2000.

## Discussion

At the outset, it is clear that, despite the complaint's one count alleging breach of contract, this is an action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, for the non-payment of benefits. Plaintiff unambiguously asserts that the benefits payable to her by defendant arise from a group long-term disability policy provided by her former employer, St. Francis Hospital, Inc. Claims by employees for non-payment of benefits under an employer-sponsored benefits plan are necessarily ERISA claims under § 1132(a), completely pre-empting any claims under state-law. <u>Butero v. Royal Maccabees</u>

7

Life Insurance Co., 174 F.3d 1207 (11th Cir. 1999). In <u>Engelhardt v. Paul Revere Life Insurance Co.</u>, 139 F.3d 1346 (11th Cir. 1998), the court of appeals explained:

> [U]nder the "complete preemption" doctrine, "Congress may preempt an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal court jurisdiction." <u>Kemp v. International Bus. Mach., Corp.</u>, 109 F.3d 708, 712 (11th Cir.1997). If a state law claim is completely preempted, courts are required to recharacterize the claim as one arising under federal law for purposes of determining removal jurisdiction. <u>Id.</u>

<u>Id.</u> at 1353; <u>see also</u> <u>Pilot Life Insurance Co. v. Dedeaux</u>, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Thus, the claim presented in this case is one seeking ERISA benefits.

Even though this clearly is an ERISA claim for long-term disability benefits under an employer-sponsored plan, it is not at all clear which of the three standards of review the court is to apply to Metropolitan's denial of benefits when neither the employer nor the Plan documents exist any longer. The three standards of review that have been identified by the courts are described in this passage from <u>Yochum v. Barnett Banks, Inc. Severance Pay Plan</u>, 234 F.3d 541, 543 (11th Cir. 2000):

> There are three standards of review appropriate in ERISA decisions. See <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (comparing ERISA law to trust law and adapting the standards of review from trust law to fit ERISA cases). Where an ERISA plan does not grant the fiduciary or plan administrator discretion over distribution of benefits, the court will apply a *de novo* standard of review . See <u>Marecek v. BellSouth Telecommunications, Inc.</u>, 49 F.3d 702, 705 (11th Cir.1995). When the plan does grant the fiduciary or plan administrator such discretion,

8

the "arbitrary and capricious" standard applies, which is analogous to an abuse of discretion standard. See Marecek, 49 F.3d at 705. Finally, if the plan grants the fiduciary or administrator discretion, but the court finds a conflict of interest between the fiduciary or administrator and the company, a "heightened arbitrary and capricious" standard applies, and the court will consider this conflict in its analysis. See Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566 (11th Cir.1990) ("[W]e hold that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest.") It is important to note that where the district court agrees with the ultimate decision of the administrator, it will not decide whether a conflict exists. It is only when the court disagrees with the decision that it looks for a conflict and, when one is found, reconsiders the decision in light of this conflict. See Marecek, 49 F.3d at 705.

Given the absence of any Plan documents or other descriptions of the St. Francis Plan, the court must apply the standard most favorable to the non-moving party, which, in this case, means that the court must conduct a *de novo* review of Metropolitan's decision to deny benefits to plaintiff.[1]

The difficulty presented by this case is precisely the fact that no one – neither the plaintiff nor Metropolitan – can produce or identify the terms of St. Francis Hospital's long-term disability plan. St. Francis closed not long after plaintiff left her employment and,

---

[1] It is also arguable that the arbitrary and capricious standard should apply because Metropolitan was vested with discretion as administrator of the long-term disability plan to make decisions regarding benefits. This standard, however, is more deferential to the administrator. Given the total absence of any plan documents in this case, and given that Metropolitan is moving for summary judgment, the court believes it should view the absence of plan documents most favorably for the non-moving plaintiff. In that way, the plaintiff is not faced with overcoming a deference to the decision to deny her coverage.

apparently, it terminated its coverage with Metropolitan. Although Metropolitan cannot produce the actual Plan documents to establish the time deadlines within which claims for disability must be made, it has presented the circumstantial proof that other long-term disability plans provided other employers included the one-year limitation language quoted above. Presented with that circumstantial evidence, to avoid summary judgment, plaintiff must come forward with some evidence to show that there is a factual dispute as to whether the particular plan documents in this case included such a provision. She has not done so, and probably cannot do so. Thus, the court assumes as undisputed that the one-year limitation provision quoted above, or something like it, operated in the St. Francis plan.[2]

It can hardly be questioned that failing to seek disability benefits for nine years after the onset of the disability is unreasonable as a matter of law. Whether or not Metropolitan is required to show actual prejudice from the nine-year delay, it has done so here, pointing out that the time delay has completely frustrated its ability to investigate plaintiff's medical status at the time she claims her disability commenced in December 1989. Because plaintiff left her employment with St. Francis on January 1, 1990, any disability beginning thereafter would not have come within the employer's plan anyway. Not only has the time delay in filing the claim prevented Metropolitan from investigating plaintiff's claim of disability at

---

[2] It is common sense to assume that some time limitations were placed upon the claim filing procedures. No plan administrator or insured would provide for an indefinite, unlimited time in which to make a claim for coverage. Such deadlines are necessary to provide the opportunity to promptly investigate and consider claims while they are current.

10

the time it arose, St. Francis has closed in the meantime, utterly blocking any attempt even to identify the terms and conditions under which benefits would be payable.[3]

Because the standard, long-term disability benefits provisions of employers similar to St. Francis required claimants to submit their claims no later than one year after the onset of the disability, or within a reasonable time, and because plaintiff clearly did not do so, defendant's motion for summary judgment is due to be granted. Plaintiff asserts she became disabled (and thus eligible for benefits) on December 17, 1989, yet the very first time Metropolitan had an inkling that she was making a claim was on December 29, 1998, over nine years later. As a matter of law, plaintiff's delay was unreasonable. Although she blames it on her mental illness, it is clear that her illness did not prevent her from seeking disability coverage under the executive disability policy (which she received for a number of years) or from seeking Social Security disability benefits in 1992. Certainly, given her knowledge about her condition and her awareness of the possibility that her condition was of the type that might warrant disability benefits, and given her apparent ability to seek benefits between 1989 and 1992, waiting until 1998 to contact Metropolitan was unreasonable as a matter of law. Cf. Hamilton v. Allen-Bradley Company, Inc., 244 F.3d 819, 824 (11th Cir. 2001) (defendant *employer* argued that notice of disability claim was untimely, court held that "the essence of this second argument is correct, but the result

---

[3] Although plaintiff asserts that Metropolitan provided the long-term disability policies under St. Francis's plan, Metropolitan is not so sure.

applies only to" the insurer, not the employer). Because the delay was unreasonable, plaintiff cannot comply with that plan provision requiring submission of her claims within a reasonable time after the onset of the disability. Thus, the denial of her claim for benefits was correct.

By separate order, the court will grant the defendant's motion for summary judgment and dismiss this action with prejudice.

DONE this 25th day of July, 2001.

                                                T. MICHAEL PUTNAM
                                                CHIEF MAGISTRATE JUDGE